


**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MEG:JMS/DGR/NJM
F. #2018R01784

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 13, 2019

By ECF

The Honorable Steven M. Gold
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Tawanna Hilliard, et al.
      Criminal Docket No. 19-358 (DLI) PKC

Dear Judge Gold:

   The government respectfully submits this letter to set forth the government's position with respect to bail as to the defendants in the above-captioned case. Tyquan Hilliard ("Tyquan") recently began serving a ten-year term of incarceration in a state facility following his conviction for robbery in New York State, and is thus not eligible for release.[1] For the reasons discussed below, there is a serious risk that Tawanna Hilliard ("Tawanna") will attempt to obstruct justice and intimidate and interfere with witnesses if released. This risk cannot be adequately offset absent a substantial bond and meaningful restrictions on her liberty, including home detention, monitoring of any and all of her electronic devices, including but not limited to, computers, smart phones and other telephones, and a total restriction of her contact with any member or known associate of the Bloods street gang. Absent such conditions, detention is appropriate.

## BACKGROUND

   Tawanna is a United States Department of Justice ("DOJ") employee who works in an administrative role in the United States Attorney's Office for the District of New

---

[1] According to records maintained by the New York State Department of Corrections and Community Supervision, Tyquan's earliest release date is November 28, 2027. The government's letter therefore addresses the bail considerations as they apply to his mother and co-defendant, Tawanna Hilliard. The same considerations would apply with equal, if not greater, force to Tyquan if he were in a position to petition the court for bail.

Jersey. She is charged with committing crimes over a two-and-a-half year period, and doing so in conjunction with, and on behalf of, her son and co-defendant Tyquan, also known as "TK," who is a member of the 5-9 Brims set of the Bloods street gang. As set forth below, Tawanna repeatedly took steps to protect the interests of the 5-9 Brims at large by working to identify and expose cooperating witnesses.

A. Use of Government Equipment to Identify Possible Cooperating Witnesses in 2016

The government's evidence will prove that in 2016, at the direction of a high-ranking member of the 5-9 Brims, Tawanna used her DOJ-issued equipment to conduct computer searches to determine whether certain individuals were cooperating with law enforcement. At the time, her son Tyquan was serving a six-year sentence in New York State prison following his conviction for possession of a loaded firearm. Recorded prison calls reflect that in or about April 2016, Tyquan got into a dispute with a high-ranking 5-9 Brims member ("Brim-1"). On or about April 20, 2016, in a telephone call with Tyquan, Tawanna confirmed that she had "looked up"[2] gang members' criminal cases at the request of Brim-1, who believed that Tawanna could find out if somebody "snitched" [i.e., provided information to law enforcement]. Tawanna reported to her son, in sum and substance and in part, "if there's not a [court] transcript I can't see it," but admitted that she had looked up the names anyway, and that after she did so, Brim-1 stopped "calling [Tawanna] back." Tawanna indicated that her search showed that neither of the people Brim-1 named as federal defendants had a case in federal court, which Tawanna described as "a red flag." During those calls, Tyquan expressed irritation that Brim-1 had involved Tawanna.

Over a week later, Tawanna had another call with Tyquan about Brim-1. That same day, Tawanna logged into her DOJ Lexis/Nexis account from an official DOJ IP address and queried multiple variations of Brim-1's name, searching for personally identifying information about Brim-1. The next day, Tawanna spoke to her son and told him, in sum and substance and in part, that she thought Brim-1 was "really trying to jam my son up . . . . I don't even know if I can just sit down for this one." Tawanna told Tyquan the spelling of Brim-1's name and the general location of Brim-1's physical address, using information learned during Tawanna's unauthorized queries of protected systems from DOJ computer systems.

Subsequent calls between Tawanna and Tyquan included discussions of possible ways to harm Brim-1 and an associate of Brim-1, including discussions about which gang members would be willing to "do something" to Brim-1 despite Brim-1's status within the gang. Based on the context of the calls, it is apparent that Tawanna and Tyquan were discussing which gang members would be willing to use violence against Brim-1. During the conversations, Tawanna used the colloquial term "hats" to refer to members of the 5-9 Brims.[3]

---

[2] All quotations are taken from draft transcripts that are subject to change.

[3] The government is not aware of any evidence that Tyquan or Tawanna subsequently tried to assault Brim-1.

B. <u>Publicly Posting Video on YouTube to Expose Possible Cooperating Witness in 2018</u>

The government's evidence will also prove that in 2018, Tawanna made publicly available a videotaped post-arrest statement given by her son's co-defendant in a pending robbery case by uploading it to YouTube, and that she did so to expose the fact that the co-defendant was "snitching." Tyquan had been arrested in connection with the robbery of a cellular telephone store in Monticello, New York, on or about May 11, 2018 (the "Monticello Robbery"). An investigation revealed that Tyquan and a person identified in the federal indictment as "John Doe" committed the Monticello Robbery by entering the store brandishing a BB gun, demanding Apple iPhones and running back to a getaway car in which another co-conspirator, "Jane Doe," was waiting. During the perpetrators' flight from the scene, law enforcement officers pursued them and ultimately pulled them over.[4] Thereafter, all three co-conspirators were arrested.

John Doe and Jane Doe both provided <u>Mirandized</u>, videotaped statements to law enforcement—including to a federal agent who advised them of the existence of a federal investigation—after their arrests. John Doe made multiple admissions, including about his involvement in the Monticello Robbery and his role in the 5-9 Brims. John Doe further stated that Tyquan was a prominent member of the 5-9 Brims, named other members of the 5-9 Brims, and asserted that John Doe had information about other violent crimes.

While Tyquan was incarcerated in Sullivan County, he and Tawanna discussed the case against Tyquan on recorded jail calls. When Tyquan learned that John Doe had made a statement to law enforcement, Tyquan told Tawanna, "I'm gonna have to do some time" because John Doe "told." Tyquan further stated that he had not yet obtained a copy of the interview.

By August 5, 2018, Tyquan and Tawanna had both obtained copies of John Doe and Jane Doe's videotaped interviews as discovery material in the case, which Tyquan referred to as "ammunition." Tyquan spoke to Tawanna that day and instructed her to post John Doe's video to YouTube. Shortly thereafter, Tawanna did exactly that. The videotaped statements were uploaded to YouTube to a newly-registered account with the name "primetime59brim." The account was created and the video was uploaded from the IP address associated with Tawanna's cable account, which was registered under her name and her apartment. Earlier that same day, Google accounts belonging to Tawanna and Tyquan were accessed from the same IP address. Tawanna logged into her account again while the primetime59brim account was still logged in, further confirming that she was the one using her own network the day that the video was posted from that network.

When it was posted, the video of John Doe's video was titled "NYC Brim Gang Member Snitching Pt. 1." The reference to "Brim Gang Member" in the title of the video was a reference to the 5-9 Brims street gang, of which John Doe and Tyquan were members. The

---

[4] Based on Tyquan's erratic driving and his decision to pull over in the fast lane, an officer was injured during the pursuit.

term "snitching" is a commonly used derogatory slang term for a person who provides information to law enforcement about criminal conduct; paperwork obtained from the 5-9 Brims reveals that "No Snitching" is the gang's first rule. As explained by multiple witnesses during the course of the government's investigation, people who cooperate with law enforcement in any way are branded as "snitches" among 5-9 Brims members and must be punished with physical attacks or even death.

Also on August 5, 2018, Tyquan directed a third person to threaten Jane Doe about the release of her video, and Tawanna agreed to send the video to that third person. Later on August 5, 2018, Jane Doe's video was posted to YouTube, using the title "NYC Brim Gang Member Snitching," followed by John Doe's Facebook name.[5]

After the publication of the YouTube videos, Jane Doe began receiving threats, including through her telephone and Facebook account. Some threats included videos intimating people were coming to Jane Doe's house to retaliate against her. The New York City Police Department ("NYPD") was alerted, and measures were taken to secure Jane Doe's safety.

Similarly, although he was incarcerated, John Doe began receiving death threats from other inmates who were members or associates of the Bloods street gang. The Federal Bureau of Investigation ("FBI") also received information about death threats that had been made against John Doe's family and, as a result, measures were taken to secure John Doe's family members.

In or about September 2018, law enforcement officers executed a search of Tawanna's residence and obtained numerous electronic devices—some of which had the John Doe and Jane Doe video interviews stored on them. In addition, electronic artifacts of apparently deleted files were recovered, including an email from Google to a "Tawanna Hilliard" Google email address that stated, "Tawanna Hilliard has shared this video with you"; the message was linked to the YouTube page containing the video of John Doe's post-arrest interview. Also found on the laptop was a screenshot of a Facebook page that included messages by users harassing Jane Doe and calling her a "rat" [i.e., a person who provided information to law enforcement]. Notably, the Facebook messages depicted in the screenshot were dated after the posting of the YouTube videos. Also discovered at Tawanna's apartment was paperwork relating to the 5-9 Brims, including the so-called BMW-list—a list of the "Brim's Most Wanted," or the gang's list of targets.

In text messages obtained pursuant to a judicially-authorized search of the electronic devices found at her apartment, Tawanna shared with a number of her contacts her disappointment that Tyquan "has no line of defense because his co-d told everything." After the videos were posted, she told a number of different contacts that "there's more [videos],"

---

[5] Although Tawanna facilitated the posting of the Jane Doe video, she is not believed to have posted it to YouTube.

and that what was posted was "the tip of the iceberg . . . ." In another message, Tawanna noted that John Doe was "giving up murders, victims, shooters and all . . . SMH."[6]

After the search of Tawanna's residence, Tyquan sent a series of letters to various recipients, including the FBI and a senior Assistant United States Attorney in the Eastern District of New York. These letters implicated Tyquan in the upload of the videos (even though he was incarcerated at the time) and indicated that, if certain demands outlined in the letters were not met, he would upload more videos of John Doe's statement.

## ARGUMENT

I. <u>Legal Standard</u>

Under the Bail Reform Act, Title 18, United States Code, Section 3141, <u>et seq.</u>, federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. <u>See</u> 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community").

A judicial officer is required to hold a hearing to determine whether any condition or combination of conditions of release "will reasonably assure the appearance of [the defendant] as required and the safety of any other person and the community" if, among other reasons, the judicial officer finds that the case "involves a serious risk that [the defendant] will flee, or a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). "[I]n determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community" the judicial officer is required to consider the available information concerning: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. <u>See</u> 18 U.S.C. § 3142(g).

At a detention hearing, the government bears the burden of establishing by a preponderance of the evidence that the defendant is a risk of flight and that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required. <u>See</u> <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987). A finding that "no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence." 18 U.S.C. § 3142(f).

---

[6] "SMH" is shorthand for "shaking my head." Tawanna presumably was "shaking her head" because she could not believe that a 5-9 Brims member would provide information about murders to law enforcement.

"The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing" and the government is entitled to proceed by proffer. Id.

      II.      The Defendant Poses a Serious Risk of Obstruction Absent a Substantial Bond and Meaningful Special Conditions

The defendant is a danger to the community and thus, if released, significant special conditions should be set in light of (1) the nature and circumstances of the offenses, including that the charged crimes are crimes of obstruction that exposed people to the risk of violent retribution; (2) the strength of the government's case against the defendant; (3) the history and personal circumstances of the defendant, including her ties to a violent street gang; and (4) the risk of further obstruction, evidenced by the nature of the charged crimes and further substantiated by Tawanna's abuse of a position of trust.

First, the charges in the indictment are incredibly serious due to the nature of the charged obstruction which was intended not only to hamper a criminal investigation but also to provoke a violent response from a dangerous street gang. Even when there are no "allegations of violence or threats aimed against witnesses"—a far cry from this case—obstruction and witness tampering pose a risk of "harm [to] the integrity of the trial" and provides an independent basis for pretrial detention. United States v. LaFontaine, 210 F.3d 125, 134-35 (2d Cir. 2000) (upholding detention based on the fact that the defendant "persistently 'fed' [a witness] information with the expectation that she would adopt it"); see also United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (finding that obstructive conduct, including threatened witness tampering, "fit within" the concept of "criminal activity to the detriment of the community" forming a basis for the defendant's detention). The risk that Tawanna will engage in further obstructive behavior and that serious violence, including death, could result is high. This is particularly true here in light of Tawanna's affiliation with the 5-9 Brims gang, a violent criminal organization that she has tapped into and could continue to utilize.

Second, the government's case against the defendant is very strong. On the day that the videos were posted, Tyquan told Tawanna to post one video and to send another to a specific person. The electronic evidence will demonstrate that the videos were posted from Tawanna's apartment, using Tawanna's wireless internet and a Google account that Tawanna was able to access because she had been sent the access codes. Tawanna also discussed the videos throughout the day of their posting, expressing happiness at their broad dissemination. Moreover, a title was added to the John Doe video that served to promote its dissemination to—and enflame the anger of—"NYC Brim gang members," with the understanding that the gang regularly sanctioned violence against so-called snitches.

Third, the defendant's personal circumstances further weigh in favor of a substantial bond with restrictive release conditions or, absent that, detention. Tawanna is in close contact with several members the 5-9 Brims and has apparently repeatedly passed messages on behalf of the gang, as demonstrated by the letters exchanged between gang

6

members that were recovered from her house, several of which reference acts of violence. The instant crime was committed with the goal of inciting 5-9 Brims members and associates to commit crimes of violence and to obstruct a legal investigation. There is strong reason to believe that Tawanna could engage in such behavior again, tapping into the same network of gang associates, including by accessing the internet, making and receiving telephone calls and sending letters through the mail. Therefore, without ensuring that Tawanna is prevented from having contact with members of the Bloods and accessing the internet or participating in unmonitored telephone calls, there is no way to ensure that Tawanna would not continue to engage in witness tampering and obstruction of justice.

Finally, there is a high risk that Tawanna will continue to commit acts of obstruction as evidenced by her charged conduct. She has exhibited a lack of deterrence in the face of criminal charges—it was Tyquan's underlying criminal case that in fact spurred her charged acts of obstruction. Now that both of them face new criminal charges, the risk of renewed and additional obstructive behavior is heightened. Tawanna was a willing and active participant in efforts by 5-9 Brims gang members to identify and expose potentially cooperating witnesses even while logged into a protected DOJ computer system—so there is no sufficient assurance that she would not do so while out on bail. There is absolutely no guarantee that Tawanna would refrain from tapping into and abusing any of the resources at her fingertips in the face of serious criminal charges if released without sufficient oversight.

## CONCLUSION

For the reasons set forth above, the government respectfully submits that Tawanna poses a significant risk of obstructing justice and tampering with witnesses absent a substantial bond and significant restrictions on her liberty. As such, the government requests that Tawanna be released on a substantial bond with the special conditions outlined herein, and as recommended by Pretrial Services, to mitigate the threat that she poses to the administration of justice.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/
Jennifer M. Sasso
Drew G. Rolle
Nicholas J. Moscow
Assistant U.S. Attorneys
(718) 254-7000